THE HONORABLE BARBARA JACOBS ROTHSTEIN

FILED          ENTERED
LODGED          RECEIVED

JUN 1 2 2001    DJ

AT SEATTLE
CLERK U S DISTRICT COURT
BY    WESTERN DISTRICT OF WASHINGTON
DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

UNITED STATES OF AMERICA,                    )
                                             )
                    Plaintiff,               )    NO. CR00-564R
                                             )
        v.                                   )    DEFENDANT DOAN'S MOTION
                                             )    TO SUPPRESS EVIDENCE AND
                                             )    MEMORANDUM IN SUPPORT
HOANG MINH DOAN,                             )    OF MOTION
HOANG VAN TRAN,                              )
HUONG L. QUACH                               )
                    Defendants.              )    NOTE FOR: JULY 13, 2001
                                             )    EVIDENTIARY HEARING IS
_____     )    NECESSARY

## I. MOTION

COMES NOW the defendant, Hoang Minh Doan, through his attorneys, Jeffrey D. Cohen and Jeffrey L. Kradel, pursuant to Federal Rule of Criminal Procedure 12(b)(3), and the Fourth Amendment to the United States Constitution, and moves this court for an order suppressing all evidence seized on November 22, 2000, during a warrantless search of 15814 SE 171st Place in Renton, Washington, and all evidence seized from that same location pursuant to a search warrant which was obtained by exploitation of the evidence gathered during the initial warrantless search.

        DATED: June 11, 2001.

COHEN & IARIA
Attorneys for Defendant
by:

Jeffrey L. Kradel
WSBA No. 26767

CR 00-00564 #00000100

**ORIGINAL**

MOTION TO SUPPRESS EVIDENCE AND
MEMORANDUM IN SUPPORT - 1

**COHEN & IARIA**
Hillclimb Court, Suite 108
1425 Western Avenue
Seattle, Washington 98101
206-624-9694

**II    MEMORANDUM**

### A. Relevant Facts

According to written reports submitted by the investigating agents in this case, on November 22, 2000, agents of a joint state and federal task force arrested Khanh Dang based upon information provided by two confidential informants. After arresting Mr. Dang, agents performed a search of Dang's vehicle, discovering marijuana and currency. Dang agreed to take the agents to the home of his "partner." The partner was identified as Hoang Doan. Dang led the agents to a house at 15814 SE 171st Place in Renton, Washington.

Upon arrival at Doan's residence, DEA Special Agent (SA) John Satchell and Task Force Officers Steve Pigman and Wally Anderson went to the front door and knocked. SA Satchell looked through a window at the top of the door and saw a female, later identified as Huong Quach approach. SA Satchell asked through the door if she would speak with him. At that time a male, later identified as Hoang Doan, approached the door from inside. SA Satchell held his badge up to the window at again stated that he wanted to talk with the occupants. Doan responded by asking to "see the warrant." SA Satchell responded that he did not have a warrant. As SA Satchell and the other agents made demands that Doan "show his hands" and open the door, Doan continued to yell that he "wanted to see the warrant." When Doan refused to open the door the agents forced their way into the home by, essentially, breaking the door down.

Once inside the home the agents took a photo of Mr. Doan. That photo was then shown to Dang and the two informants, who identified the individual as Hoang Doan. All identified Doan as having been a participant with them in the sale of large amounts of marijuana. This information was then utilized to obtain a search warrant for the residence at 15814 S.E. 171st Place in Renton. The search warrant was authorized by King County District Court Judge Vicki Seitz based upon the sworn statement of Detective Wilfred Yulfo of the Seattle Police Department.

### B. Argument

        1      <u>All Evidence Discovered As a Result of The Warrantless Entry Into Mr. Doan's Home Must be Suppressed.</u>

**MOTION TO SUPPRESS EVIDENCE AND**
**MEMORANDUM IN SUPPORT - 2**

**COHEN & IARIA**
**Hillclimb Court, Suite 108**
**1425 Western Avenue**
**Seattle, Washington 98101**
**206-624-9694**

1    As a general rule, warrantless searches and seizures are per se unreasonable  *Coolidge v*

2  *New Hampshire*, 403 U.S 443, 29 L. Ed 2d 564, 91 S. Ct. 2022 (1971). There are a few "'jealously

3  and carefully drawn' exceptions" to the warrant requirement  *Arkansas v. Sanders*, 442 U.S. 753,

4  759, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979). The burden is on the prosecutor to show that a

5  warrantless search or seizure falls within one of those exceptions  If the prosecution cannot meet

6  that burden, all evidence obtained as a result of the search must be suppressed.  *United States v*

7  *Jamerson*, 549 F.2d 1263, 1270 (9th Cir. 1977).  That burden cannot be met in this case.

8    At the time the government agents broke into Mr. Doan's residence, they did not have any

9  information that the residence contained evidence or weapons. They had no information to support

10  a reasonable suspicion that Mr. Doan or his wife, Huong Quach, were armed or in any way presented

11  a threat to the safety of the agents.  The only potential for a dangerous situation was created when

12  the agents forced their way into the private residence. This was after their request to be admitted was

13  denied by the homeowners and after the homeowners requested that the agents demonstrate their

14  lawful authority for requesting admittance, namely, a search warrant.   There were no exigent

15  circumstances justifying the unlawful entry into Doan's home.

16    The agents exploited their unlawful entry into the home by taking a photograph of Mr. Doan

17  and questioning him at length about unlawful activities.  The photograph was shown to the other

18  suspects in the case, and their identification of Doan as a co-conspirator was then presented as the

19  basis for requesting a warrant to search Doan's home.[1]   Doan also made statements to the agents

20  which were then utilized in obtaining a search warrant for a residence at 2806 South Hudson Street

21  in Seattle where marijuana was discovered and Mr. Doan's original co-defendant, Toan Nguyen, was

22  arrested.[2]  The identification of Doan by Dang and the informants, the search warrant based upon

23  that identification, and the evidence found in the search of Nguyen's residence are all "fruits" of the

24

25

26  [1] A copy of the Affidavit in Support of the Search Warrant and the warrant itself are attached to this motion as Appendix A.

27  [2] A copy of that search warrant and supporting affidavit are attached as Appendix B.

28

**COHEN & IARIA**
**Hillclimb Court, Suite 108**
**1425 Western Avenue**
**Seattle, Washington 98101**
**206-624-9694**

**MOTION TO SUPPRESS EVIDENCE AND**
**MEMORANDUM IN SUPPORT - 3**

1    initial unlawful entry into Doan's home. All of the evidence gathered as a result of those fruits must

2    be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963).

3

4         2.   The Search Warrant Authorizing The Search of Mr. Doan's Home Was Issued In the
              Absence of Probable Cause to Believe Evidence of a Crime Was Contained Within
5              that Residence.

6         "Probable cause exists when is a 'fair probability,' given the totality of the

7    circumstances, that contraband or evidence of a crime will be found in a particular place." *Illinois*

8    *v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). In this case the question

9    becomes whether the information provided to King County District Court Judge Vicki Seitz was

10   sufficient to find a "fair probability" that evidence of the crime of Violation of the Uniformed

11   Controlled Substance Act could be found in the house at 15814 171st Place in Renton.

12        There was no information provided in the affidavit of Detective Wilfred Yulfo, submitted

13   in support of the search warrant application, upon which to base a finding that there was any

14   probability that evidence of a crime was within the house in Renton. This is particularly true if

15   information gathered during the warrantless search of that house is excised from the affidavit. If the

16   identification of Mr. Doan's photograph by Dang and the two informants is removed, there is no

17   relationship established between the information provided regarding marijuana sales and possession

18   and Mr. Doan. Even with that information included, there is a total absence of facts from which the

19   issuing judge could conclude that the residence at 15814 S.E. 171st Place in Renton contained

20   evidence of a crime.

21        **C.   Conclusion**

22

23        All of the evidence seized by the government during the searches of 15814 S.E. 171st Place

24   in Renton, Washington, must be suppressed. Any evidence which the government discovered as a

25   direct result of those searched should be suppressed as well.

26        Mr. Doan respectfully requests the opportunity to submit additional authority following the

27   anticipated evidentiary hearing on this motion.

28

**MOTION TO SUPPRESS EVIDENCE AND
MEMORANDUM IN SUPPORT - 4**

**COHEN & IARIA**
**Hillclimb Court, Suite 108**
**1425 Western Avenue**
**Seattle, Washington 98101**
**206-624-9694**

1   DATED this ___ day of June, 2001.

2

3

4                           COHEN & IARIA
                            Attorneys for Defendant
5                           by:

6

7

8                           _____
                            Jeffrey L. Kradel
9                           WSBA #26767

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO SUPPRESS EVIDENCE AND
MEMORANDUM IN SUPPORT - 5

# APPENDIX A

**United States v. Hoang Doan, et. al.**, No. CR00-564R
**Defendant Doan's Motion to Suppress Evidence**

1  *District* COURT FOR KING COUNTY

2
3  STATE OF WASHINGTON     )                    Affidavit of Detective ~~Jonathan Haley~~ *Wilfred Yuro*
4                          )          ss        for Search Warrant Pursuant
5  COUNTY OF KING          )                    To RCW 69.50.505
6
7

## 8  The undersigned on oath states: I believe that:

9   (X)    Evidence of the crimes(s) of <u>VIOLATION OF THE UNIFORMED CONTROLLED</u>
10         <u>SUBSTANCES ACT</u>
11  (X)    Contraband, the fruits of a crime, or things otherwise criminally possessed, and
12
13  (X)    Weapons or other things by means of which a crime has been committed or reasonably
14         appears about to be committed, and
15
16  (X)    A person for whose arrest there is probable cause, or who is unlawfully restrained is/are
17         located in, on, or about the following described premises, vehicle or person
18
19
20         For the residence **described as a beige house with white trim located at 15814 S.E. 171st**
21         **Place,** in the City of Renton, County of King, and the State of Washington

22  My belief is based on the following facts and circumstances

## 23  *AFFIANTS EXPERIENCE*

24   Your affiant is a Police Officer with the Seattle Police Department and has been so for over *nine years*

25  During that period of time the affiant has been a Detective for over *four years* and of that time the affiant

26  has been a Task Force Agent with D E A for over *six months*. The affiant has been involved in over *two*

27  *hundred* narcotic related cases, most of which were at the dealer/supplier level  The affiant has attended

28  several specialty schools with an emphasis on the investigation of *narcotic related cases.*  The affiant is

29  currently assigned to the D E A/ HIDTA Transportation Group, in SeaTac, Washington    Based on this

30  training and experience, the affiant is able to recognize various narcotics, and is familiar as how it is

31  packaged and sold

## 32  *INFORMANTS/ COOPERATING WITNESSES*

33   The two informants have cooperated with the D E A   During this time the informants have proven reliable

34  in the following manner, by furnishing names, addresses, and detailed information of people who are

35  currently trafficking in controlled substances  I have been able to verify this information through police

36  files and/or personal knowledge  These informants are familiar with controlled substances through over six

37  months of distributing marijuana and association with persons who use/sell controlled substances

1  **Affidavit For Search Warrant**
   **Page 1 of 6**

38 **ITEMS TO BE SEIZED**

39   Any controlled substance as defined in RCW 69 50 , specifically marijuana, narcotics paraphernalia, items
40   used in the weighing and packaging of controlled substances, papers of dominion and control over the
41   premise, photographs, electronic storage devices to include computers, fax machine, answering machines,
42   storage disk, etc , records of narcotic sales, money or other proceeds from illegal narcotics activity,
43   weapons, and/or vehicles

44 **DESCRIPTION OF OVERT ACTS/VIOLATIONS**

45   The informants identified as Wally J Humphreys and Cory D Daggett were arrested on November 21,
46   2000, in connection with a marijuana distribution investigation by Detective Sean Bennett of the Salem
47   Police Department Humphreys and Daggett volunteered to assist Detective Bennett by providing any
48   information they had about their supplier of marijuana Humphreys and Daggett stated that they bought an
49   average of 80 to 100 pounds of marijuana per week from two Asian males known to them as "Hong" and
50   the other as "Kong" Humphreys and Daggett told Detective Bennett that they owed "Hong" and "Kong"
51   money for their previous purchase, and were going to pick up an additional forty pounds of marijuana from
52   "Hong" and "Kong" on November 22, 2000, in Renton, Washington Detective Daggett and members of
53   the Task Force contacted D E A Special Agent Jack Smalley and explained the preceeding circumstances
54   and requested the assistance of the D E A Task Force, in SeaTac, Washington The operation to apprehend
55   "Hong" and "Kong" had Humphreys and Daggett follow through with their meeting with "Hong" and
56   "Kong", after Humphreys was directed to contact "Kong" via telephone Humphreys then identified
57   "Kong", to Detective Jonathan Haley when he arrived at the predetermined location chosen by "Kong"
58   "Kong" was then taken into custody and identified as Khanh Cong Dang. Washington State Trooper
59   Cooper applied his K-9 dog to the vehicle that "Kong" arrived in Trooper Cooper stated to Sergeant
60   Michael Cassaday that his dog indicated that there was a odor of narcotics from the trunk of "Kong's"
61   vehicle The trunk was opened by D E A Special Agent John Satchell Inside the trunk was seized a large
62   duffel bag containing thirty one plastic bags of suspected marijuana Each bag contained approximately
63   500 grams of suspected marijuana The suspected marijuana was field tested by Special Agent Jack
64   Smalley The test yielded a positive result for marijuana Also seized from the trunk was approximately
65   twenty five thousand dollars (U S currency) "Kong" stated to Special Agent John Satchell that he wanted
66   to cooperate by taking the Agent where his partner, "Hong", lived "Hong" directed Special Agent John
67   Satchell to 15814 S E 171st Place, in the city of Renton Special Agent John Satchell knocked on the front
68   door of 15814 S E 171st Place Through a window of the front door Special Agent John Satchell saw an
69   Asian female Special Agent John Satchell asked the Asian female if she would talk to him Moments later
70   an Asian male came into Special Agent John Satchell's view  Special Agent John Satchell put his badge up
71   in the window of the front door and again asked if the Asian couple would open the door and speak to him.
72   The Asian male responded by yelling "Oh Shit!" and yelled a phrase in a foreign language, presumably

73 | Vietnamese The Asian female responded by running out of sight of Special Agent John Satchell, while the
74 | Asian male stood in the room beyond the front door Special Agent John Satchell could not see the Asian
75 | male's hands and failed at numerous requests to make his hands visible to Special Agent John Satchell
76 | Special Agent John Satchell feared that the female may either have been retrieving a weapon or destroying
77 | evidence and it was unclear whether the Asian male had a weapon Subsequently the front door was
78 | breached, and the residence secured A photograph was taken of the Asian male in the house, the
79 | photograph was shown to Khanh Cong Dang a k a "Kong", Humphreys and Daggett All identified him as
80 | "Hong"

81

82
83 | **OTHER SUPPORTIVE EVIDENCE SUPPORTING SEARCH OR ITS SCOPE**

84 | Based upon my background, training and experience as previously detailed in the affidavit, I know

85 | • That drug traffickers have on their person and/or premises narcotics and/or drug paraphernalia
86 | • That narcotic traffickers often deliver and sell narcotics in or from vehicles
87 | • That drug traffickers commonly secure contraband, proceeds of drugs sales, narcotics, weapons, and
88 | records of drug transactions in storage lockers for their ready access and to conceal them from law
89 | enforcement

90 | • That narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money
91 | orders, cashiers checks and other papers relating to the transportation, ordering, possession, purchase,
92 | sale, transfer and information of controlled substances
93 | • That the aforementioned books, records, receipts, notes, ledger, etc , are maintained where the
94 | narcotics traffickers have ready access to them, i e , on their persons, in their vehicles, or about their
95 | residences
96 | • That I know that it is common for dealers to secret contraband, proceeds of drug sales, and records of
97 | drug transactions in secure locations on their person, within or around their residences, or in the their
98 | vehicles, for ready access or to conceal them from law enforcement authorities
99 | • That I know that persons involved in drug trafficking conceal on their persons, within or around their
100 | residences and vehicles cashes of drugs, large amount of currency, financial instruments, precious
101 | metals, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of
102 | financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money
103 | made from engaging in narcotics trafficking activities
104 | • That I know that narcotics traffickers commonly maintain addresses or telephone numbers in books or
105 | papers which reflect names, addresses and/or telephone numbers for their associates in the trafficking
106 | organization, these books or papers include such items as address books, slips or paper, telephone
107 | messages, in and on correspondence, etc i e , shortened and/or code names are sometimes used for
108 | weights, buyers, and the names of suppliers and/or customers of the narcotics trafficker
109 | • That I know that drug traffickers take, or cause to be taken, photographs of them, their associates, their
110 | property, cash, and assets and their product. That these traffickers usually maintain these photographs
111 | in their possession, particularly in their residences
112 | • That I know that narcotics traffickers usually keep paraphernalia for packaging, cutting, weighing, and
113 | distributing of their product That paraphernalia includes, but is not limited to, scales, plastic bags and
114 | cutting agents
115 | • That Narcotics traffickers frequently utilize such communication devices such as pagers, mobile
116 | telephones, telephone answering machines within their drug trafficking business, and that they often
117 | utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting
118 | machines, computer watches, and related manuals to generate, transfer, count, record, and/or store

3  **Affidavit For Search Warrant**
   **Page 3 of 6**
   3  wy

119  information about their drug trafficking activities and/or information evidencing their participation in,
120  or gains from, their drug trafficking activities, and /or their financial affairs
121  • That drug dealers maintain in their residences financial type record which, when analyzed, will show
122  that their accumulation and expenditures of money and assets substantially exceeds any legitimate
123  income, I am aware that the courts have recognized that unexplained wealth is probative evidence of
124  crimes motivated by greed, in particular, trafficking in narcotics
125  • That drug dealers maintain in their residences and vehicles and on their persons weapons (including
126  ammunition and holster) to protect themselves from apprehension by law enforcement and from other
127  drug traffickers
128  • That drug traffickers commonly secure contraband, proceeds of drugs sales, narcotics, weapons, and
129  records of drug transactions in storage lockers for their ready access and to conceal them from law
130  enforcement
131  • That drug traffickers commonly use alias when renting and purchasing property to conceal their
132  conduct from law enforcement.
133  • That drug traffickers very often place assets in names other than their own to avoid detection of these
134  assets by law enforcement agencies
135  • That even though these assets are in other person's names, the drug dealers continue to use these assets
136  and exercise dominion and control over the assets
137  • That narcotics traffickers commonly "front" (provide on consignment) controlled substance to their
138  clients
139  • Records are usually recorded in units of weight and monetary values, associated with pounds, kilos,
140  ounces or other such units of measurement and dollar amounts making it easier to carry on day-to-day
141  business
142  • That I know that when drug traffickers amass proceeds from the sale of drugs, that the drug traffickers
143  attempt to legitimize these profits
144  • That I know that to accomplish these goals, drug traffickers utilize, including, but not limited to,
145  foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts,
146  letters of credit, brokerage houses, real estate, shell corporations, and business front.
147  • That I know that it is common for narcotics traffickers to travel, or have their associates travel, to
148  major distribution centers, including Mexico, to purchase narcotics
149  • That I know that the methods of transportation include, but are not limited to, commercial airlines,
150  private airplanes, rental automobiles, private automobiles, government and contact mail carriers
151  • I understand that the courts have recognized that narcotics traffickers commonly keep evidence of their
152  crimes at their place of residence   See St v Gross, 57 Wa App 549(1990), U S v Freeman, 685 F
153  2d 942, 950 5th Cir (1992), U S v Dubrofsky, 581 f2d. 208 9th cir (1978)

154
155
156
157
158
159
160
161
162
163
164

165

## PLACES TO BE SEARCHED

Based on the above, I believe that evidence of the crime Violation of the Uniform Controlled Substance Act is located at **15814 S.E. 171st Place, in the City of Renton, County of King, and the State of Washington,** that a search warrant should be issued directing that a search of said premise and/or vehicle(s) located at/in/on said premises  That controlled substances, specifically marijuana, be seized, together with evidence relating to occupancy and/or ownership of said premise, evidence relating to drug operations and wealth, writings, paraphernalia, moneys and firearms associated to the use and/or sale of controlled substances

" I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct"

_____          _11/22/2000 - 2107 HRS_
Detective Wilfred Yolfo                              Date/Time

Seattle Police Department


    Reviewed by


    _____
    King County Prosecutors Office


    Subscribed and Sworn to before me in my presence, this __22__ day of __Nov__ 2000


    _____JUDGE  KCDC COURT
                                     SW Dir,


5   **Affidavit For Search Warrant**
    **Page 1 of 6**
        5 wy

# ~~District~~ COURT FOR KING COUNTY

| | | | |
|---|---|---|---|
| **STATE OF WASHINGTON** | ) | | No. |
| | ) | ss | |
| **COUNTY OF KING** | ) | | **Search Warrant** |

### TO ANY PEACE OFFICER IN THE STATE OF WASHINGTON:

Upon the sworn complaint, the affidavit for which is incorporated by reference herein, made before me there is probable cause to believe that the crime(s) of VIOLATION OF THE UNIFORMED CONTROLLED SUBSTANCE ACT has been committed and that evidence of that crime, or contraband, the fruits of crime, or things otherwise criminally possessed, or weapons or other things by means of which a crime has been committed or reasonably appears about to be committed, or a person for whose arrest there is probable cause, or who is unlawfully restrained is/are concealed in or on certain premises, vehicles or persons

YOU ARE COMMANDED to

1  Search, within 3 days of this date, the premises, vehicle or person described as follows

For the residence described as a beige house with white trim located at **15814 S.E. 171st Place and/or vehicle(s) located at/in/on said premise,** in the City of Renton, County of King, and the State of Washington

2  Seize, if located, the following property or person(s)

Marijuana, and items used in the preparation, weighing and packaging of controlled substances, records of sales, records of customers indicative of narcotics trafficking, papers of dominion and control over a residence, money proceeds from the sales of controlled substances, and weapons used to guard and protect said money and controlled substances

3  Promptly return this warrant to me or the clerk of this court, the return must include an inventory of all property seized

Search Warrant
Page 1 of 2

A copy of the warrant and a receipt for the property taken shall be given to the person from whom or from whose premises property is taken. If no person is found in possession, a copy and receipt shall be conspicuously posted at the place where the property is found.

Date/Time   *22 November 2000*   *9:10 p.m.*

JUDGE

*VICKI SEITZ*

Printed or Typed Name of Judge

( ) This warrant was issued by the above judge, pursuant to the telephonic warrant procedure authorized by JCrR 2 10 and CrR 2 3,

on        , 19     at      m

_____

Detective  Wilfred Yulfo, Seattle Police Department          _____

Printed or Typed Name of Peace                          Signature of Peace Officer Authorized

Officer, Agency and Personnel                          to Affix Judge's Signature to Warrant

Number

Search Warrant
Page 2 of 2

# APPENDIX B

<u>United States v. Hoang Doan, et. al.</u>, No. CR00-564R
**Defendant Doan's Motion to Suppress Evidence**

1    COURT FOR KING COUNTY

2
3    STATE OF WASHINGTON    )          Affidavit of Detective ~~Jonathan Haley~~ *WILFRED YOUNG*
4                          )    ss    for Search Warrant Pursuant
5    COUNTY OF KING         )          To RCW 69.50.505
6
7

## 8    The undersigned on oath states: I believe that:

9    (X)    Evidence of the crime(s) of _VIOLATION OF THE UNIFORMED CONTROLLED
10          SUBSTANCES ACT_
11   (X)    Contraband, the fruits of a crime, or things otherwise criminally possessed, and
12
13   (X)    Weapons or other things by means of which a crime has been committed or reasonably
14          appears about to be committed, and
15
16   (X)    A person for whose arrest there is probable cause, or who is unlawfully restrained is/are
17          located in, on, or about the following described premises, vehicle or person
18
19
20          For the residence described as a red brick house with white trim located at 2806 S.
21          Hudson Street, in the City of Seattle, County of King, and the State of Washington Also for
22          the person in the residence known as "Thang" an Asian male

23   My belief is based on the following facts and circumstances

## 24   *AFFIANTS EXPERIENCE*

25   Your affiant is a Police Officer with the Seattle Police Department and has been so for over *nine years*.

26   During that period of time the affiant has been a Detective for over *four years* and of that time the affiant

27   has been a Task Force Agent with D E A for over *six months*. The affiant has been involved in over *two*

28   *hundred* narcotic related cases, most of which were at the dealer/supplier level The affiant has attended

29   several specialty schools with an emphasis on the investigation of *narcotic related cases.* The affiant is

30   currently assigned to the D E A/ HIDTA Transportation Group, in SeaTac, Washington   Based on this

31   training and experience, the affiant is able to recognize various narcotics, and is familiar as how it is

32   packaged and sold

## 33   *INFORMANTS/ COOPERATING WITNESSES*

34   The two informants have cooperated with the D E A   During this time the informants have proven reliable

35   in the following manner, by furnishing names, addresses, and detailed information of people who are

36   currently trafficking in controlled substances   I have been able to verify this information through police

37   files and/or personal knowledge These informants are familiar with controlled substances through over six

38   months of distributing marijuana and association with persons who use/sell controlled substances

1   **Affidavit For Search Warrant**
    **Page 1 of 6**

14

39   **ITEMS TO BE SEIZED**

40   Any controlled substance as defined in RCW 69 50 , specifically marijuana, narcotics paraphernalia, items
41   used in the weighing and packaging of controlled substances, papers of dominion and control over the
42   premise, photographs, electronic storage devices to include computers, fax machine, answering machines,
43   storage disk, etc , records of narcotic sales, money or other proceeds from illegal narcotics activity,
44   weapons, and/or vehicles

45   **DESCRIPTION OF OVERT ACTS/VIOLATIONS**

46   The informants identified as Wally J Humphreys and Cory D Daggett were arrested on November 21,
47   2000, in connection with a marijuana distribution investigation by Detective Sean Bennett of the Salem
48   Police Department Humphreys and Daggett volunteered to assist Detective Bennett by providing any
49   information they had about their supplier of marijuana Humphreys and Daggett stated that they bought an
50   average of 80 to 100 pounds of marijuana per week from two Asian males known to them as "Hong" and
51   the other as "Kong" Humphreys and Daggett told Detective Bennett that they owed "Hong" and "Kong"
52   money for their previous purchase, and were going to pick up an additional forty pounds of marijuana from
53   "Hong" and "Kong" on November 22, 2000, in Renton, Washington Detective Daggett and members of
54   the Task Force contacted D E A Special Agent Jack Smalley and explained the preceeding circumstances
55   and requested the assistance of the D E A Task Force, in SeaTac, Washington The operation to apprehend
56   "Hong" and "Kong" had Humphreys and Daggett follow through with their meeting with "Hong" and
57   "Kong", after Humphreys was directed to contact "Kong" via telephone Humphreys then identified
58   "Kong", to Detective Jonathan Haley when he arrived at the predetermined location chosen by "Kong"
59   "Kong" was then taken into custody and identified as Khanh Cong Dang Washington State Trooper
60   Cooper applied his K-9 dog to the vehicle that "Kong" arrived in Trooper Cooper stated to Sergeant
61   Michael Cassaday that his dog indicated that there was a odor of narcotics from the trunk of "Kong's"
62   vehicle The trunk was opened by D E.A. Special Agent John Satchell Inside the trunk was seized a large
63   duffel bag containing thirty one plastic bags of suspected marijuana Each bag contained approximately
64   500 grams of suspected marijuana The suspected marijuana was field tested by Special Agent Jack
65   Smalley The test yielded a positive result for marijuana. Also seized from the trunk was approximately
66   twenty five thousand dollars (U S currency) "Kong" stated to Special Agent John Satchell that he wanted
67   to cooperate by taking the Agent where his partner, "Hong", lived "Hong" directed Special Agent John
68   Satchell to 15814 S E 171st Place, in the city of Renton Special Agent John Satchell knocked on the front
69   door of 15814 S E 171st Place Through a window of the front door Special Agent John Satchell saw an
70   Asian female Special Agent John Satchell asked the Asian female if she would talk to him. Moments later
71   an Asian male came into Special Agent John Satchell's view Special Agent John Satchell put his badge up
72   in the window of the front door and again asked if the Asian couple would open the door and speak to him
73   The Asian male responded by yelling "Oh Shit!" and yelled a phrase in a foreign language, presumably

74 | Vietnamese  The Asian female responded by running out of sight of Special Agent John Satchell, while the
75 | Asian male stood in the room beyond the front door  Special Agent John Satchell could not see the Asian
76 | male's hands and failed at numerous requests to make his hands visible to Special Agent John Satchell
77 | Special Agent John Satchell feared that the female may either have been retrieving a weapon or destroying
78 | evidence and it was unclear whether the Asian male had a weapon  Subsequently the front door was
79 | breached, and the residence secured  A photograph was taken of the Asian male in the house, the
80 | photograph was shown to Khanh Cong Dang a k a  "Kong", Humphreys and Daggett  All identified him as
81 | "Hong"  As a result of the aforementioned information a search warrant was obtained and executed at
82 | 15814 S E 171st Place, in the city of Renton  During the search approximately 12 pounds of suspected
83 | marijuana and several thousand dollars was seized  The suspect known as "Hong" was identified as Hoang
84 | Minh Doan  Both suspects Dang, a k a  "Kong" and Doan, a k a  "Hong" stated independently of each other
85 | that their supplier was an Asian male known to them as "Thang"  Dang, a k a  "Kong" directed D E A
86 | Special Agent John Satchell to "Thang's" address  Dang stated to Agent John Satchell that he had been in
87 | the housethe previous day,  November 21, 2000, and picked up two pounds of marijuana from "Thang"
88 | The address was on South Hudson Street, in the city of Seattle  The house is described as a red brick house
89 | with white trim, the number "2806" was visible on the outside of the house
90 |
91 |
92 | ## OTHER SUPPORTIVE EVIDENCE SUPPORTING SEARCH OR ITS SCOPE
93 | Based upon my background, training and experience as previously detailed in the affidavit, I know

94-98
- That drug traffickers have on their person and/or premises narcotics and/or drug paraphernalia
- That narcotic traffickers often deliver and sell narcotics in or from vehicles
- That drug traffickers commonly secure contraband, proceeds of drugs sales, narcotics, weapons, and records of drug transactions in storage lockers for their ready access and to conceal them from law enforcement

99-104
- That narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, cashiers checks and other papers relating to the transportation, ordering, possession, purchase, sale, transfer and information of controlled substances
- That the aforementioned books, records, receipts, notes, ledger, etc , are maintained where the narcotics traffickers have ready access to them, i e , on their persons, in their vehicles, or about their residences

105-107
- That I know that it is common for dealers to secret contraband, proceeds of drug sales, and records of drug transactions in secure locations on their person, within or around their residences, or in the their vehicles, for ready access or to conceal them from law enforcement authorities

108-112
- That I know that persons involved in drug trafficking conceal on their persons, within or around their residences and vehicles cashes of drugs, large amount of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging in narcotics trafficking activities

113-115
- That I know that narcotics traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their associates in the trafficking organization, these books or papers include such items as address books, slips or paper, telephone

3  **Affidavit For Search Warrant**
   **Page 3 of 6**
   3

messages, in and on correspondence, etc i.e., shortened and/or code names are sometimes used for

116 weights, buyers, and the names of suppliers and/or customers of the narcotics trafficker

117 • That I know that drug traffickers take, or cause to be taken, photographs of them, their associates, their

118 property, cash, and assets and their product  That these traffickers usually maintain these photographs

119 in their possession, particularly in their residences

120 • That I know that narcotics traffickers usually keep paraphernalia for packaging, cutting, weighing, and

121 distributing of their product. That paraphernalia includes, but is not limited to, scales, plastic bags and

122 cutting agents.

123 • That Narcotics traffickers frequently utilize such communication devices such as pagers, mobile

124 telephones, telephone answering machines within their drug trafficking business, and that they often

125 utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting

126 machines, computer watches, and related manuals to generate, transfer, count, record, and/or store

127 information about their drug trafficking activities and /or information evidencing their participation in,

128 or gains from, their drug trafficking activities, and /or their financial affairs

129 • That drug dealers maintain in their residences financial type record which, when analyzed, will show

130 that their accumulation and expenditures of money and assets substantially exceeds any legitimate

131 income, I am aware that the courts have recognized that unexplained wealth is probative evidence of

132 crimes motivated by greed, in particular, trafficking in narcotics

133 • That drug dealers maintain in their residences and vehicles and on their persons weapons (including

134 ammunition and holster) to protect themselves from apprehension by law enforcement and from other

135 drug traffickers

136 • That drug traffickers commonly secure contraband, proceeds of drugs sales, narcotics, weapons, and

137 records of drug transactions in storage lockers for their ready access and to conceal them from law

138 enforcement

139 • That drug traffickers commonly use alias when renting and purchasing property to conceal their

140 conduct from law enforcement

141 • That drug traffickers very often place assets in names other than their own to avoid detection of these

142 assets by law enforcement agencies

143 • That even though these assets are in other person's names, the drug dealers continue to use these assets

144 and exercise dominion and control over the assets

145 • That narcotics traffickers commonly "front" (provide on consignment) controlled substance to their

146 clients

147 • Records are usually recorded in units of weight and monetary values, associated with pounds, kilos,

148 ounces or other such units of measurement and dollar amounts making it easier to carry on day-to-day

149 business.

150 • That I know that when drug traffickers amass proceeds from the sale of drugs, that the drug traffickers

151 attempt to legitimize these profits

152 • That I know that to accomplish these goals, drug traffickers utilize, including, but not limited to,

153 foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts,

154 letters of credit, brokerage houses, real estate, shell corporations, and business front

155 • That I know that it is common for narcotics traffickers to travel, or have their associates travel, to

156 major distribution centers, including Mexico, to purchase narcotics

157 • That I know that the methods of transportation include, but are not limited to, commercial airlines,

158 private airplanes, rental automobiles, private automobiles, government and contact mail carriers

159 • I understand that the courts have recognized that narcotics traffickers commonly keep evidence of their

160 crimes at their place of residence  See St v Gross, 57 Wa. App  549(1990), U S v Freeman, 685 F

161 2d 942, 950 5th Cir (1992), U S v Dubrofsky, 581 f2d  208 9th cir (1978)

162

163

164

165

166

167

17

168
169
170
171
172
173

174

## *PLACES TO BE SEARCHED*

176 Based on the above, I believe that evidence of the crime Violation of the Uniform Controlled Substance
177 Act is located at **For the residence described as a red brick house with white trim located at 2806 S.**
178 **Hudson Street, also for the person in the residence known as "Thang" an Asian male., that a search**
179 **warrant should be issued directing that a search of said premise and/or vehicle(s) located at/in/on**
180 **said premises** That controlled substances, specifically marijuana, be seized, together with evidence
181 relating to occupancy and/or ownership of said premise, evidence relating to drug operations and wealth,
182 writings, paraphernalia, moneys and firearms associated to the use and/or sale of controlled substances
183 " I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and
184 correct"

185 _____          __11_/_23_/_2000_ – _c008 HRS_
186 Detective Wilfred Yulfo                            Date/Time

187 Seattle Police Department
188
189    Reviewed by
190
191    _____
192    King County Prosecutors Office
193
194
195    Subscribed and Sworn to before me in my presence, this ___23___ day of __Nov__, 2000

196
197 _____JUDGE  _KCDC_ _COURT_
198                                        SW Div,
199

# _____COURT FOR KING COUNTY

| | | | |
|---|---|---|---|
| **STATE OF WASHINGTON** | ) | | **No.** |
| | ) | **ss** | |
| **COUNTY OF KING** | ) | | **Search Warrant** |

## TO ANY PEACE OFFICER IN THE STATE OF WASHINGTON:

Upon the sworn complaint, the affidavit for which is incorporated by reference herein, made before me there is probable cause to believe that the crime(s) of VIOLATION OF THE UNIFORMED CONTROLLED SUBSTANCE ACT has been committed and that evidence of that crime, or contraband, the fruits of crime, or things otherwise criminally possessed, or weapons or other things by means of which a crime has been committed or reasonably appears about to be committed; or a person for whose arrest there is probable cause, or who is unlawfully restrained is/are concealed in or on certain premises, vehicles or persons

YOU ARE COMMANDED to·

1 Search, within 3 days of this date, the premises, vehicle or person described as follows.
   For the residence **described as a red brick house with white trim located at 2806 S. Hudson Street,** in the City of Seattle, County of King, and the State of Washington Also for the person in the residence known as **"Thang" an Asian male, and/or vehicle(s) located at/in/on said premise.**

2 Seize, if located, the following property or person(s)

   Marijuana, and items used in the preparation, weighing and packaging of controlled substances, records of sales, records of customers indicative of narcotics trafficking, papers of dominion and control over a residence, money proceeds from the sales of controlled substances, and weapons used to guard and protect said money and controlled substances

3   Promptly return this warrant to me or the clerk of this court, the return must include an inventory of all property seized

Search Warrant
Page 1 of 2

A copy of the warrant and a receipt for the property taken shall be given to the person from whom or from whose premises property is taken   If no person is found in possession, a copy and receipt shall be conspicuously posted at the place where the property is found

Date/Time·   *23 Nov · 2000*

JUDGE

*Vicki Seitz*

Printed or Typed Name of Judge

( ) This warrant was issued by the above judge, pursuant to the telephonic warrant procedure authorized by JCrR 2 10 and CrR 2 3,

on          , 19      at         m

_____

Detective  Wilfred Yulfo, Seattle Police Department                    _____

Printed or Typed Name of Peace                                          Signature of Peace Officer Authorized
Officer, Agency and Personnel                                                to Affix Judge's Signature to Warrant
Number

Search Warrant
Page 2 of 2

20

1   DECLARATION OF SERVICE

2

3   I, KELLI HOPE, do hereby declare:

4

5

6      1. That I am over the age of eighteen years and that I am now and at all times relevant was

7   a citizen of the United States and resident in the State of Washington.

8      2. That on the 12th day of June, 2001, I served a copy of DEFENDANT DOAN'S MOTION

9   TO SUPPRESS EVIDENCE AND MEMORANDUM IN SUPPORT OF MOTION, and a copy of

10  this Declaration of Service on all counsel of record by depositing them in the U.S. Mail, first class

11  postage prepaid.

12

13

14                                   *Kelli Hope*

15                                   Kelli Hope

16

17

18

19

20

21

22

23

24

25

26

27

28                       ORIGINAL

**MOTION TO SUPPRESS EVIDENCE AND
MEMORANDUM IN SUPPORT - 6**

COHEN & IARIA
Hillclimb Court, Suite 108
1425 Western Avenue
Seattle, Washington 98101
206-624-9694